UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-00562-H

LIBERTY MUTUAL INSURANCE COMPANY                                  PLAINTIFF

V.

MARINE ELECTRIC COMPANY, INC.,
CHARLES A. WIRTH, and FRANCES B. WIRTH                          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This lawsuits arises in connection with an enforcement action against Defendants Marine Electric Company, Inc. ("Marine Electric"), Charles A. Wirth and Frances B. Wirth (collectively the "Wirths").  Plaintiff, Liberty Mutual Insurance Company ("Liberty Mutual") issued several payment and performance bonds on behalf of Marine Electric for construction projects located in Kentucky and Tennessee.  After Marine Electric defaulted and Liberty Mutual was called upon to make payments on the surety bonds, Liberty Mutual filed this action to enforce its rights against Defendants as signatories to the General Agreement of Indemnity (the "Indemnity Agreement").  Before the Court is Liberty Mutual's motion to dismiss the Wirths' counterclaims and motion to strike the Wirths' seventh defense.  For the reasons set forth herein, the Court grants both motions.

I.

Liberty Mutual, acting as a surety bonding company, issued a number of payment and performance bonds on behalf of Marine Electric for construction projects located in Kentucky and Tennessee.  In June 2007, Marine Electric and the Wirths (in their individual capacities) executed the Indemnity Agreement for Liberty Mutual to hold it harmless from claims arising from the surety

bonds. After Marine Electric defaulted on several projects, Liberty Mutual received a number of claims against various performance and payment bonds it issued on behalf of Marine Electric. Liberty Mutual filed suit against Marine Electric and the Wirths seeking indemnity and equitable relief in accordance with the Indemnity Agreement. The Wirths filed a counterclaim against Liberty Mutual alleging breach of the Indemnity Agreement, fraud, and various violations of Kentucky administrative regulations. Liberty Mutual has now moved to dismiss the Wirths' counterclaims and strike their seventh affirmative defense.

For the Wirths' counterclaims to survive Liberty Mutual's motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The Court must view the allegations in the Complaint in the light most favorable to the Wirths, treating all well-pleaded facts as true, but need not accept bare legal conclusions as definitive. *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)).

II.

Count I of the Wirths' counterclaim alleges Liberty Mutual breached several provisions of the Indemnity Agreement. Because the Indemnity Agreement is unambiguous on its face, and the Wirths have not argued otherwise, the Court will interpret the contract as plainly written. *See U.S. Fid. & Guar. Co. v. Napier Elec. and Constr. Co.*, 571 S.W.2d 644, 646 (Ky. Ct. App. 1978) (stating

2

"the nature of an indemnitor's liability under an indemnity contract shall be determined by the provisions of the indemnity agreement itself").

The Wirths first allege Liberty Mutual breached the Indemnity Agreement by its failure to timely file a U.C.C. financing statement. They argue Liberty Mutual had a contractual obligation to file a U.C.C. financing statement, and had they done so in a timely fashion, they would have had priority to Marine Electric assets. Per ¶ FOURTH, the Indemnity Agreement could serve as a security agreement and financing statement in accordance with the U.C.C., but it in no way obligated Liberty Mutual to file the agreement as a financing statement. Since filing a financing statement was entirely in the discretion of Liberty Mutual, its alleged failure to do so does not amount to a breach of the Indemnity Agreement.

Next, the Wirths allege Liberty Mutual breached the Indemnity Agreement in its failure to assume the bonded projects in a timely or cost-effective manner. However, under ¶ FIFTH of the Indemnity Agreement, Liberty Mutual had the right "at its **option** and in its sole **discretion**" to takeover failed bonded projects. This provision did not obligate, let alone define the manner in which Liberty Mutual was to assume bonded projects. Accordingly, the Wirths' allegation is again defeated by the clear terms of the Indemnity Agreement.

The Wirths also allege Liberty Mutual denied financing to Marine Electric in contravention to the Indemnity Agreement. In addition, they argue Liberty Mutual breached its duty of good faith by failing to conduct an investigation before denying Marine Electric's request for funding. However, under the clear provisions in ¶ SEVENTH, Liberty Mutual was authorized, "in its sole discretion and without any obligation" to advance money to Marine Electric. The Indemnity Agreement likewise had no provision demanding Liberty Mutual investigate a request for financing.

Accordingly, Liberty Mutual did not breach the Indemnity Agreement by exercising its clear and unambiguous right to deny financing.

The Wirths have failed to identify any terms of the Indemnity Agreement that Liberty Mutual breached. The Court will hold the parties to its unambiguous terms.

III.

Count II of the Wirths' counterclaim alleges fraud or fraud in the inducement. This claim is based upon their contention that Liberty Mutual, by and through its employees, agents and/or representatives, assured the Wirths that the assets of Marine Electric would be adequate collateral for the Indemnity Agreement such that the Wirths' personal assets would not be at risk. This representation, they allege, was made to induce the Wirths to enter into the Indemnity Agreement.

Beyond meeting the plausibility standard in a motion to dismiss, a fraud claim must meet the special pleading requirements of Federal Rules of Civil Procedure 9(b). *Minger v. Green*, 239 F. 3d 793, 800 (6th Cir. 2001). Rule 9(b) requires that "the circumstances constituting fraud . . . be stated with particularity." Fed.R.Civ.P. 9(b). To comply with this requirement Defendants must, at a minimum, "[a]llege the time, place and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the [Plaintiff]; and the injury resulting from the fraud." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 646 (6th Cir. 2003) (internal quotation marks and citations omitted). This Rule imposes a heightened pleading requirement in order to give adequate notice to defendants and to prevent filing of suits that simply hope to uncover relevant information during discovery. *See U.S. ex. Rel. Marlar v. BWXT Y-12 L.L.C.*, 525 F.3d 439, 445 (6th Cir. 2008). This Rule is to be considered with other pleading

4

standards, such as Rule 8's requirement that allegations be short, plain, simple, concise and direct as is reasonable under the circumstances. Fed.R.Civ.P. 8. Nonetheless, allegations in the form of mere legal conclusions as to the existence of fraud are insufficient.

The Wirths have failed to satisfactory plead with particularity the circumstances of any allegation of fraud in conformity with Federal Rules of Civil Procedure 9(b) and 12(b)(6). The Wirths have failed to identify any Liberty Mutual agents or representatives who purportedly made the statements. Additionally the counterclaim does not specify when and where the misrepresentations were made. Such pertinent facts likely would not be uncovered in the discovery process because they are presumably already known to the Wirths. Without more, the allegations are purely speculative and conclusory. Consequently, the Wirths fraud claim fails as a matter of law.

IV.

Finally, in the Wirths' counterclaim, they allege various violations of one or more provisions of (1) KRS 304.12-230 Kentucky Unfair Claims Settlement Practices, (2) 806 KAR Chapter 12 Trade Practices and Frauds and (3) the Federal Equal Credit Opportunity Act.

The Kentucky Unfair Claims Settlement Practices Act ("USCPA") was enacted to protect claimants from unfair insurance practices. The law enumerates fourteen specific practices which can amount to unfair claims settlement practices. The Wirths allege Liberty Mutual acted in bad faith by possibly colluding with a competitor to take advantage of the financially vulnerable Marine Electric. Under the clear terms of the Indemnity Agreement, the Wirths are not insured, but rather joint and several indemnitors along with Marine Electric. As such, they may not maintain a claim against a surety for unfair claim settlement practices. Liberty Mutual had a surety obligation and

5

the right to seek indemnification from the Wirths – this is not the type of insurance transaction contemplated by the statute. Accordingly, the statute has no application to Liberty Mutual's enforcement action.

KAR Chapter 12 of Title 806 covering actionable trade practices and frauds is also inapplicable in the instant case. The regulations clearly carve out protection for suretyship contracts. Accordingly, the regulations are inapplicable to the Indemnity Agreement, a suretyship contract.

Lastly, the Wirths allege Liberty Mutual violated 12 C.F.R. § 202.16, an enforcement provision in the Federal Equal Credit Opportunity Act ("ECOA"). Liberty Mutual argues this claim has no merit because neither the execution of the Indemnity Agreement nor the issuance of bonds qualified as an extension of credit under the ECOA. This Court agrees. An action under the ECOA can only be maintained between statutorily defined credit applicants and creditors involving the extension of credit. *See* 12 C.F.R. § 202.2 Definitions. Here, the execution of an Indemnity Agreement was not an extension of credit. *See Capitol Indem. Corp. v. Aulakh*, 313 F.3d 200, 204 (4th Cir. 2002) (stating "that the issuance of surety bonds does not constitute a credit transaction as defined under the ECOA"). The definition of credit found in the ECOA involves the right to defer payment on a debt. The surety bonds issued in this case did not give Marine Electric the right to defer payment, but rather provided that in the event Marine Electric defaulted on its contractual obligations, Liberty Mutual would take the place of Marine Electric to satisfy those obligations. By virtue of the Indemnity Agreement, Liberty Mutual could then immediately proceed against Marine Electric for indemnification from losses resulting from the payment of surety bonds. This is not a credit transaction as defined in the ECOA. Because the ECOA does not apply to Liberty Mutual's enforcement action, it could not have violated a provision of the ECOA.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's Motion to Dismiss is SUSTAINED; the Counterclaim of Charles A. Wirth and Frances B. Wirth is DISMISSED WITH PREJUDICE; and the Wirths' Seventh Affirmative Defense is STRICKEN.

cc:     Counsel of Record