UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-00562-H

LIBERTY MUTUAL INSURANCE COMPANY                                    PLAINTIFF

V.

MARINE ELECTRIC COMPANY, INC.,
CHARLES A. WIRTH, and FRANCES B. WIRTH                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This lawsuits arises from an enforcement action against Defendants Marine Electric Company, Inc. ("Marine Electric"), Charles A. Wirth and Frances B. Wirth (collectively the "Wirths"). Plaintiff, Liberty Mutual Insurance Company ("Liberty Mutual") issued several payment and performance bonds on behalf of Marine Electric for construction projects located in Kentucky and Tennessee. After Marine Electric defaulted and Liberty Mutual was called upon to make payments on the surety bonds, Liberty Mutual filed suit to enforce its rights against Defendants as signatories of the General Agreement of Indemnity (the "Indemnity Agreement"). Before the Court is the Wirths' motion to file an amended counterclaim and motion for leave to file a third-party complaint. For the reasons set forth herein, the Court denies both motions.

I.

Liberty Mutual, acting as a surety bonding company, issued a number of payment and performance bonds on behalf of Marine Electric for construction projects located in Kentucky and Tennessee. In June 2007, Marine Electric and the Wirths (in their individual capacities) executed the Indemnity Agreement for Liberty Mutual to indemnify Liberty Mutual from claims arising from the surety bonds. Sometime later, after Marine Electric defaulted on several projects, Liberty

Mutual received a number of claims on various performance and payment bonds it issued on behalf of Marine Electric. Liberty Mutual filed suit against Marine Electric and the Wirths seeking indemnity and equitable relief in accordance with the Indemnity Agreement. The Wirths filed several counterclaims in their answer. Through their review of discovery, the Wirths contend to have learned facts that support additional claims. Presently before the Court is the Wirths' motion for leave to file an amended counterclaim and a motion for leave to file a third-party complaint. In the third-party complaint, the Wirths sue Henderson Services, LLC and Rodney J. Henderson (collectively "Henderson"). Henderson was a prospective buyer of Marine Electric and as part of its due diligence, entered into various confidentiality agreements with Marine Electric. The motions are fully briefed and ripe for review.

II.

The Wirths filed a motion for leave to amend their counterclaim in light of information learned during discovery. Under Federal Rule of Civil Procedure 15(a), federal courts "should freely give leave [to amend] when justice so requires." Although motions for leave to amend a complaint are often granted, they nevertheless should "be denied if the amendment . . . would be futile." *Crawford v. Roane*, 54 F.3d 750, 753 (6th Cir. 1995). An amendment is deemed futile if it could not overcome a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). To survive a motion to dismiss, "the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level,' and 'state a claim to relief that is plausible on its face.'" *Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 903 (6th Cir. 2000)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

This Court recently dismissed all of the Wirths' original counterclaims against Liberty Mutual.[1] The Wirths' amended counterclaim alleges (1) breach of the implied covenant of good faith, (2) fraud, (3) tortious interference with a contract, and (4) breach of KRS § 304.12-230, the Kentucky Unfair Claims Settlement Practices Act. The Court will deal with each counterclaim in turn.

A.

Count I of the Wirths' original counterclaim against Liberty Mutual alleged Liberty Mutual breached several provisions of the Indemnity Agreement. This Court recently dismissed this claim finding that Liberty Mutual's actions were not in contravention to any express provision of the Indemnity Agreement. The Wirths now ground their breach of contract claim on Liberty Mutual's alleged breach of the implied covenant of good faith and fair dealing. Every contract contains an implied covenant of good faith and fair dealing. *Brett v. Media General Operations, Inc.*, 326 S.W.3d 452, 457 (Ky. Ct. App. 2010).

Here, the Wirths argue Liberty Mutual breached the covenant of good faith by failing to assume bonded projects in a timely or cost-effective manner and failing to timely file a financing statement. In its previous opinion, the Court found under the clear terms of the Indemnity Agreement, these actions were within the discretion of Liberty Mutual. Many of the Wirths' allegations are founded upon actions they hoped Liberty Mutual would take in the event of Marine Electric's default. However, a Court need not delve into the expectations of parties when the contract is clear on its face. *See Meyers v. Ky. Medical Ins. Co.*, 982 S.W.2d 203, 208 (Ky. Ct. App.

---

[1] Specifically, this Court dismissed the following claims: breach of the Indemnity Agreement; fraud; and various violations of (1) KRS 304.12-230, the Kentucky Unfair Claims Settlement Practices Act, (2) 806 KAR Chapter 12 Trade Practices and Frauds and (3) the Federal Equal Credit Opportunity Act.

1997)(finding "that the doctrine of reasonable expectations is inapplicable [when] there is no ambiguity").

The Court finds Liberty Mutual exercised this discretion in good faith. All of Liberty Mutual's actions were within the bounds of the Indemnity Agreement to which the Wirths voluntarily signed. *See Farmers Bank & Trust Co. v. Wilmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005) ("An implied covenant of good faith and fair dealing does not prevent a party from exercising its contractual rights."). The Court finds that allowing the Wirths to make this amendment is futile as it would not survive a motion to dismiss.

B.

The Wirths' amended counterclaim asserts that Liberty Mutual is vicariously liable for Henderson's fraudulent representations to the Wirths. Specifically, the Wirths argue that at the direction of Liberty Mutual, Henderson fraudulently made misrepresentations regarding its interest in purchasing Marine Electric, as part of a ruse to obtain confidential information. The Wirths allege Henderson was Liberty Mutual's agent at the time. To support this conclusion, the Wirths point to several e-mail exchanges between Henderson and Marine Electric controller Dwight Hannah, which discussed the financial fitness of Marine Electric. Henderson forwarded the e-mail exchange to Toff P. Loehnert, a representative of Wells Fargo, who then forwarded it on to Liberty Mutual.[2]

The Wirths contend that Liberty Mutual used this information to gain a business advantage over Marine Electric. Beyond this, the Wirths have not alleged any direct evidence that supports the agency allegation, but rather surmise that the respective parties' conduct during this time is prima facie evidence of an agency relationship.

---

[2]It is unclear to the Court who employed Loehnert. The Wirths have not alleged any business connection between Loehnert and Liberty Mutual other than Loehnert forwarding emails to Liberty Mutual.

The Wirths' claim against Liberty Mutual based upon its alleged vicarious liability for Henderson's fraud would not survive a motion to dismiss for two reasons. First, the Wirths have failed to plausibly allege that Henderson was Liberty Mutual's agent at the time Henderson purportedly engaged in fraud. "Under basic agency principles, an agent acts on the principal's behalf and is subject to the principal's control." *Ernst & Young, LLP v. Clark*, 323 S.W.3d 682, 694 (Ky. 2010). The Wirths have not alleged any facts that demonstrate Henderson was under the control of Liberty Mutual. In fact the Wirths' own brief states that the Wells Fargo employee "immediately took it upon himself to convey the privileged information to Liberty." Additionally an e-mail from Mr. Henderson stated he had "no problem if [the e-mail is forwarded] on to Liberty Mutual." The allegations, as set forth by the Wirths, depict Liberty Mutual as more of a passive receiver to the emails. The Wirths have failed to allege an agency relationship as a matter of law. Accordingly, the Court does not find Liberty Mutual vicariously liable for Henderson's alleged fraud.

Second, the fraud claim fails to meet the pleading requirements for fraud under Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that "the circumstances constituting fraud . . . be stated with particularity." Fed. R. Civ. P. 9(b). To comply with this requirement Defendants must, at a minimum, "[a]llege the time, place and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the [Plaintiff]; and the injury resulting from the fraud." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 646 (6th Cir. 2003) (internal quotation marks and citations omitted). The Wirths have failed to allege with particularity how Liberty Mutual was involved in Henderson's fraudulently procurement of sensitive information from Marine Electric. At most, Liberty Mutual's involvement was as a passive recipient of the e-

mails. The pleadings do not ever allege Liberty Mutual solicited this information from Henderson. As a passive recipient, Liberty Mutual was not involved in any purported fraudulent scheme. Because the Wirths' fraud claim would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the proposed amendment to the countercomplaint is futile for purposes of Fed. R. Civ. P. 15(a).

C.

The Wirths' tortious interference claim alleges Liberty Mutual induced or otherwise caused Henderson to breach confidentiality agreements it had with Marine Electric. To prove such a claim, the Wirths must show (1) the existence of a contract; (2) Liberty Mutual's knowledge of this contract; (3) that Liberty Mutual intended to cause Henderson to breach the contract; (4) that Liberty Mutual's conduct in fact caused Henderson's breach; (5) that this breach resulted in damages to the Wirths; and (6) that Liberty Mutual has no privilege or justification to excuse its conduct. *Dennison v. Murray State Univ.*, 465 F.Supp.2d 733, 755 (W.D.Ky. 2006) (citing *CMI, Inc. v. Intoximeters, Inc.*, 918 F.Supp. 1068, 1079 (W.D.Ky. 1995)).

While the first element of this cause of action is met, the remaining element are not. Marine Electric, the Wirths and Henderson entered into a Memorandum of Understanding ("MOA") and Confidentiality Agreement ("NDA") during the time Henderson was considering the purchase of Marine Electric. These contracts allowed Henderson to receive information about Marine Electric in exchange for Henderson's promise to keep such information confidential. Henderson may have breached the MOA and NDA when it disclosed information regarding Marine Electric to the Wells Fargo employee, but Liberty Mutual never induced Henderson to do so. Again, the Wirths have failed to sufficiently allege Liberty Mutual ever solicited Henderson for information regarding

Marine Electric. Accordingly, the Court finds granting leave to amend the counterclaim is futile for purposes of Fed. R. Civ. P. 15(a) as it would not survive a motion to dismiss.

D.

This Court recently denied the Wirths' counterclaim against Liberty Mutual alleging various violations under the Kentucky Unfair Claims Settlement Practices Act (the "UCSPA"). In that decision, this Court found that under the clear terms of the Indemnity Agreement, the Wirths are not insured, but rather are joint and several indemnitors along with Marine Electric. As indemnitors, they did not have standing to maintain a claim against a surety for unfair claim settlement practices.

In their most recent filing, the Wirths urge the Court to instead find standing for the Wirths as private citizens of the Commonwealth of Kentucky. *See State Farm Mut. Auto Ins. Co. v. Reeder*, 763 S.W.2d 116, 117 (Ky. 1988) (finding the right of a private citizen to maintain an action against an insurer for violation of the UCSPA since the statute is a public protection statute). To maintain such a suit, the Wirths must allege Liberty Mutual's conduct ran afoul of one of the seventeen enumerated acts found in the statute. *See* KRS § 304.12-230. The Wirths do not specify which provisions are applicable, but rather state general factual allegations that they believe are covered in the statute. For instance, the Wirths contend they have a colorable claim for bad faith because Liberty Mutual "unjustifiably required Mrs. Wirth to indemnify an entity over which she had no control." The Wirths did not specify what provision of the UCSPA this violates. In reviewing the offending acts or omissions enumerated in the statute, the Court is unable to decipher what provision this conduct violates. The Court is unable to find any conduct by Liberty Mutual that constitutes an unfair claims settlement practice. Allegations in the form of mere legal conclusions as to the existence of an unfair claims settlement practice are insufficient to survive a motion to dismiss.

All of the Wirths' proposed amendments are futile for purposes of Fed. R. Civ. P. 15(a) because they would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Accordingly, the Court denies the Wirths' motion for leave to file an amended counterclaim.

### III.

The Wirths have moved for leave to file a third-party complaint against Henderson. Federal Rule of Civil Procedure 14 governs third-party practices, including when a defendant, as a third-party plaintiff, may implead a person not a party to the action. "The purpose of Rule 14 is to permit additional parties who rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008). Under the rule, a third-party complaint may be served upon "a nonparty who is or may be liable to [the defendant] for all or part of the claim against it." Fed.R.Civ.P. 14(a). A recent Sixth Circuit case further distilled the rule:

> Third-party pleading is appropriate only where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim; one that merely arises out of the same set of facts does not allow a third-party defendant to be impleaded. A defendant attempting to transfer the liability asserted against him by the original plaintiff to the third-party defendant is therefore the essential criterion of a third-party claim.

*Am. Zurich Ins. Co.*, 512 F.3d at 805. In sum, a defendant's claim against a nonparty cannot be an independent claim; the third-party claim must be based upon the original plaintiff's claim against the defendant.

The Wirths' third-party complaint asserts the follow claims against Henderson: breach of contract (Counts I & IV), fraud (Count II), misrepresentation (Count III), conspiracy (Count V), and

8

breach of KRS § 304.12-230, the Kentucky Unfair Claims Settlement Practices Act (Count VI). The Wirths' third-party complaint is improper at this juncture because it attempts to implead an entity and individual not involved in the underlying indemnity action.

Liberty Mutual filed suit against Marine Electric and the Wirths seeking indemnity and collateralization under the Indemnity Agreement executed by the Wirths and Marine Electric. Under Fed. R. Civ. P. 14, the Wirths may properly implead Henderson in this action only if the Wirths demonstrate that if they themselves are found to be liable to Liberty Mutual under the Indemnity Agreement, then Henderson is secondarily liable to them. This is not what their third-party complaint alleges.

While the third-party claims somewhat relate to Liberty Mutual's indemnity claim in a factual sense, Henderson's liability is not derivative of the Wirths' contractual liability to Liberty Mutual under the Indemnity Agreement. Only the Wirths and Marine Electric are obligated to indemnify Liberty. This obligation cannot be shifted to Henderson. *See Ohio Farmers Ins. Co. v. Special Coatings, LLC*, 2008 WL 5378079 at *14 (M.D. Tenn. 2008)("The only claim [plaintiff] asserts is the [third-party plaintiff's] contractual liability on the indemnity agreement, and the [third-party plaintiff] cannot pass that indemnity liability to [third-party defendant] by raising an independent claim of negligence against [third-party defendant] that could be pursued in a separate case."). The claims against Henderson are entirely independent from the indemnity claim asserted by Liberty Mutual against the Wirths. As such, the Court denies the Wirths' motion for leave to file a third-party complaint.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants Charles A. Wirth and Frances B. Wirth's

motion to leave to file an amended complaint is DENIED.

IT IS FURTHER ORDERED that Defendants Charles A. Wirth and Frances B. Wirth's motion to leave to file a third-party complaint is DENIED.

The only remaining motion at this time is Liberty Mutual's motion for preliminary injunction.

cc: Counsel of Record